**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny B. Dyer,<br>for Robert G. Dyer, deceased,<br><br>         Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner<br>of Social Security,<br><br>         Defendant. | No. CV-13-00379-PHX-NVW<br><br>**ORDER** |

On February 21, 2013, Plaintiff Robert G. Dyer initiated this action, seeking review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Plaintiff, now deceased, is represented by Johnny B. Dyer. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence, the Commissioner's decision will be vacated and the matter remanded for immediate award of benefits.

## I. BACKGROUND

### A. Factual Background

Plaintiff was born in August 1961. He had a high school education and was able to communicate in English. He worked as a purchasing agent, customer service representative, auto parts inspector, and shipping clerk for auto parts. He was diagnosed with both mental and physical severe impairments.

### B. Procedural History

On January 28, 2009, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning June 4, 2003. On February 7, 2012, and June 19, 2012, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On September 14, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On February 21, 2013, Plaintiff sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2008, and that he had not engaged in substantial gainful activity since June 4, 2003. At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, obsessive-compulsive disorder,

borderline personality disorder, ulcerative colitis with a history of colectomy, left knee meniscal tear, and lumbar degenerative disc disease. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally; can sit, stand and/or walk for up to 6 hours with normal breaks out of 8 hours; no limitations with pushing/pulling as long as within weight restrictions given; can occasionally climb ramps/stairs and should never climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to hazards, such as heavy moving machinery and unprotected heights. The claimant is restricted to performing simple work, and can understand, carry out and remember simple instructions; should have only brief, defined as occasional and superficial interaction with coworkers and the public; and can appropriately use judgment in a work situation. Further, the claimant is limited to performing work in a repetitive-type job with minimal to no changes in routine.

The ALJ further found that Plaintiff is unable to perform any of his past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so, with no evidence of malingering, (2) reject the claimant's testimony about the

severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Once the claimant produces medical evidence of an underlying impairment, the claimant's testimony as to the severity of symptoms may not be discounted solely because it is unsupported by the objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ may consider the following factors: the claimant's reputation for truthfulness, inconsistencies in the claimant's testimony or between his testimony and his conduct, the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms complained of. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722.

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

The ALJ summarized the evidence supporting her credibility evaluation:

> In terms of the claimant's alleged impairments, the medical evidence does not support the level of limitations alleged and [they are] not supported by the evidence as a whole. The description of symptoms and limitations which the claimant has provided throughout the record has generally been inconsistent and unpersuasive. The claimant's subjective complaints that the symptoms are so severe that they are disabling, are not consistent with the objective findings, the activities of daily living, the treatment history, and the effectiveness of medications and treatment indicated in the record.

Although the ALJ found Plaintiff's subjective complaints not credible regarding his symptoms being so severe to the extent that they are disabling, the ALJ included

- 5 -

limitations in the residual functional capacity determination consistent with Plaintiff's subjective complaints. For example, the ALJ noted that Plaintiff testified on February 7, 2012, that he cannot function at all with his mental impairments and cannot deal with the public at all, but he reported activities of daily living such as going to the grocery store that were inconsistent with his testimony. Notwithstanding finding Plaintiff less than fully credible, the ALJ adopted a residual functional capacity determination that restricted him to performing simple work with simple instructions and only occasional and superficial interaction with coworkers and the public.

Plaintiff contends that the ALJ erred by failing to focus on the records from June 4, 2003, Plaintiff's alleged onset of disability date, through September 30, 2008, his last insured date, and by citing records after September 30, 2008. But it was Plaintiff's burden to prove disability beginning in June 4, 2003, and no later than September 30, 2008, and he alleged a disability that continued through 2012, not one that ended in 2008. Plaintiff's reports of subjective symptoms after September 30, 2008, especially testimony at the 2012 administrative hearings and records of psychiatric hospitalization in 2010, were relevant to the ALJ's credibility evaluation. Moreover, Plaintiff expressly directed the ALJ to consider evidence after September 30, 2008.

Plaintiff further contends that there is no basis to infer that Plaintiff misrepresented or exaggerated his medical problems in reports to his health care providers between November 2007 and October 2008 because he did not have a pending disability claim during those months. But the ALJ was entitled to consider all of the evidence regarding Plaintiff's alleged disability beginning June 4, 2003, not merely a period during which Plaintiff presumably was not motivated to misrepresent or exaggerate his medical problems.

The ALJ explained in detail the evidence she considered in evaluating Plaintiff's credibility. The evidence included the activities of daily living described or reported in the record since the alleged onset date, such as driving, going out alone, running errands,

doing light household chores, managing bills and finances, and trimming bushes. The ALJ considered that Plaintiff's knee surgery in August 2011 was generally successful in relieving the reported knee pain and that treatment notes dated January 26, 2010, showed that medication significantly improved Plaintiff's abdominal pain and increasing frequency of bowel movements. The ALJ also expressly considered that, at times, Plaintiff was not cooperative or refused mental health counseling, indicated that he did not need counseling, or reported that his mental condition had improved with medication. The ALJ further found that inconsistent statements made by Plaintiff damaged his credibility. These are specific, clear, and convincing reasons for finding Plaintiff's testimony not fully credible to the extent he said that his symptoms were so severe that they are disabling.

### B. The ALJ Did Not Err in Determining Plaintiff's Residual Functional Capacity.

A residual functional capacity finding involves a detailed assessment of how a claimant's medical impairments affect his ability to work. In determining a claimant's residual functional capacity, the ALJ "must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of all symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ must consider the combined effect of multiple conditions, including those that are not severe. *See* 20 C.F.R. § 404.1545(a)(2). A plaintiff's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995).

Plaintiff challenges the ALJ's residual functional capacity determination for not incorporating reasonable limitations from Plaintiff's credible subjective symptom complaints, failing to include consideration of the cumulative effect of Plaintiff's gastrointestinal dysfunction, and improperly weighing medical source evidence regarding

mental impairment. Plaintiff's challenge depends in large part on assuming that the ALJ's credibility evaluation was erroneous and, as concluded above, it was not.

Plaintiff contends that the ALJ "incorrectly excluded consideration of the cumulative effect of Mr. Dyer's well-documented GI dysfunction that eventually, if at all, improved only by early 2010, but should have been acknowledged as a substantial factor in the approximately 7-year period after Plaintiff's 2003 alleged disability onset date." In particular, if Plaintiff's estimate of how frequently he needed access to a bathroom from 2003 to 2010 was found to be credible, the residual functional capacity assessment should have included a corresponding limitation. The ALJ noted that treatment records showed improvement by January 26, 2010, and during a 2010 consultative examination, the doctor reported that Plaintiff needed only one break during a 2.5-hour exam. Therefore, the ALJ did not err by finding Plaintiff's February 7, 2012 testimony that he was having bowel movements up to 25 times a day not credible and not including a corresponding limitation in the residual functional capacity assessment.

Plaintiff further contends that the ALJ "agglomerated very specific information from two examining psychologists, and even from a non-examining state agency 'consultant,' into vague and undefined restrictions that included the ability to perform 'simple work' that was repetitive and had 'minimal to no changes in routine,' and to understand, carry out, and remember 'simple' instructions." The ALJ also considered records from treating psychiatrist James E. Campbell, M.D., beginning in May 2005 through July 25, 2007; treating psychiatrist John Garafalo, M.D., from March 2006 through March 2007; and treating psychiatric mental health nurse practitioner Rose Garduno, M.S., from August 2007 through December 2011.

On April 26, 2006, Greg A. Peetoom, Ph.D., examined Plaintiff and provided a psychological evaluation report and Medical Source Statement of Ability to Do Work Related Activities (Mental). Dr. Peetoom opined that Plaintiff was moderately limited ("fair/limited but not precluded") in his ability to understand, remember, and carry out

detailed instructions because "depression and anxiety may periodically interfere with this ability." He also opined that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Peetoom assessed Plaintiff as having no evidence of limitation or not significantly limited in all other areas. The ALJ gave "significant weight" to Dr. Peetoom's opinions because they were consistent with the conclusion that Plaintiff is capable of simple tasks with limited social interaction and generally consistent with the medical evidence of record.

      The ALJ also gave "great weight" to the assessments of reviewing state agency psychologists/psychiatrists Jocelyn Fuller, Ph.D., and Stephen Fair, Ph.D. The ALJ summarized their assessments as finding "considerable mental limitations and severe impairments of anxiety and depression" and concluding Plaintiff is "capable of simple tasks, due to anxiety and depression." Plaintiff incorrectly criticizes the reviewing state agency doctors and the ALJ for failing to interpret Dr. Peetoom's findings of moderate limitations as precluding full-time work when, by definition, they did not. The ALJ correctly interpreted all of these assessments as supporting the conclusion that Plaintiff was capable of performing simple work and understanding, remembering, and carrying out simple instructions with minimal interaction with coworkers and the public.

### C. The ALJ Erred by Relying on the Unreliable Testimony of the Vocational Expert.

At step five, after having determined that Plaintiff's disabilities prevented him from doing his past relevant work, the ALJ was required to decide whether Plaintiff's impairments prevented him from performing other work that exists in the national economy, considering his residual functional capacity together with the "vocational factors" of age, education, and work experience. Social Security Policy Ruling ("SSR") 00-4p (12/4/00). Work is considered as existing in the national economy when both (1) its requirements can be met by the claimant with his or her physical or mental abilities and vocational qualifications, and (2) it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a), (b).

The Commissioner will take administrative notice of reliable job information from various governmental and other publications, but relies primarily on the Dictionary of Occupational Titles published by the Department of Labor and its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles. 20 C.F.R. § 404.1566(d); SSR 00-4p. The Commissioner also may use the services of a vocational expert or other specialist to determine whether a claimant's work skills can be used in other work and the specific occupations in which they can be used. 20 C.F.R. § 404.1566(e). "An ALJ may take administrative notice of any reliable job information, including information provided by a [vocational expert]." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

During the February 7, 2012 hearing, the ALJ questioned vocational expert Gretchen Bakkenson using hypotheticals based on a person of Plaintiff's age, education, and work history, who could perform light work, was restricted to performing simple work, could understand, carry out, and remember simple instructions, and was limited to occasional and superficial interaction with coworkers and the public. The ALJ further

indicated that the hypothetical person was limited to performing work in a repetitive-type job with minimal to no changes in routine. The vocational expert testified that the hypothetical person could perform jobs such as stock clerk, order filler, marker, protective clothing issuer, outsole scheduler, electromechanical assembler, and spark plug assembler. The vocational expert was unable to interpret the information she had regarding the number of such jobs in Arizona and in the national economy, and she could not differentiate between jobs requiring repetition of a sequence of tasks and those involving repetitive work with minimal to no changes in routine. Therefore, the ALJ concluded that a supplemental hearing would be held so that the vocational expert could prepare the information needed.

During the June 19, 2012 hearing, the vocational expert testified that she interpreted "simple tasks" to be the equivalent of "unskilled work." She also testified that "unskilled work" includes jobs classified as requiring reasoning at levels 1, 2, and 3. Reasoning level 1 requires the worker to carry out simple one or two step instructions in standardized situations. Reasoning level 2 requires the worker to carry out detailed, but uninvolved written or oral instructions. Reasoning level 3 requires the worker to carry out instruction furnished in written, oral, or diagram form and dealing with problems involving several concrete variables in or from standard situations. The vocational expert opined that "carrying out detailed written or oral instructions is the same as following simple instructions." In her opinion, any unskilled job would meet the ALJ's limitation of simple tasks and simple instructions regardless of the reasoning level required. She repeated, "All unskilled work requires simple directions and simple tasks."

The ALJ explicitly based the residual functional capacity determination on evidence of record establishing that Plaintiff had the ability to understand, remember, and carry out simple instructions, but was moderately limited in the ability to understand, remember, and carry out detailed instructions. The ALJ expressly found that Plaintiff was "restricted to performing simple work, and can understand, carry out, and remember

simple instructions." The vocational expert's testimony did not provide any evidence to support the ALJ's conclusion that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Nor did the ALJ identify any other evidence supporting this conclusion, which is essential to finding Plaintiff not disabled. Thus, the ALJ's decision is not supported by substantial evidence.

### D. Remand

If the ALJ's decision is not supported by substantial evidence or suffers from legal error, the district court has discretion to reverse and remand either for an award of benefits or for further administrative proceedings. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Remand for further proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Id.* (citing *Smolen*, 80 F.3d at 1292). There have been multiple opportunities for the Commissioner to develop the record concerning other work that exists in the national economy that Plaintiff could perform, considering his residual functional capacity. Remand is not appropriate just to allow either party to fill an essential gap in their evidence that they already had unimpeded opportunity to supply. Moreover, remand for benefits is preferred where the claimant has already endured lengthy, burdensome litigation. *Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001).

The ALJ's decision is not supported by substantial evidence in an essential respect. Plaintiff's claim at issue in this case was filed more than five years ago, and Plaintiff is deceased. The Court will exercise its discretion to remand this case for immediate award of benefits.

- 12 -

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is VACATED and this case is REMANDED for immediate calculation of benefits.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 28th day of March, 2014.

_____
Neil V. Wake
United States District Judge